(54 South. 820.)

No. 18,284.

STATE ex rel. BOARD OF COM'RS FOR FIFTH LOUISIANA LEVEE DIST. v. CAPDEVIELLE, State Auditor.

(March 27, 1911.)

*(Syllabus by the Court.)*

1. LEVEES (§ 7*)—LANDS.

Lands and islands belonging to or situated within the limits of a levee district are not within the purview of section 1, Act 124 of 1902, ordering the survey and sale of islands and lake lands for public school purposes.

[Ed. Note.—For other cases, see Levees, Dec. Dig. § 7.*]

2. LEVEES (§ 7*)—SURVEY AND SALE — CONSTRUCTION OF STATUTES.

By Act 191 of 1908 the low islands in the Mississippi river within the limits of the parishes of East Carroll, Madison, Tensas, and Concordia were granted to the board of commissioners of the Fifth Louisiana levee district.

[Ed. Note.—For other cases, see Levees, Dec. Dig. § 7.*]

Appeal from Twenty-Second Judicial District Court, Parish of East Baton Rouge; H. F. Brunot, Judge.

Mandamus by the State on the relation of the Board of Commissioners for the Fifth Louisiana Levee District, against Paul Capdevielle, State Auditor. Judgment for defendant, and relator appeals. Reversed, and peremptory writ granted.

Farrar, Jonus, Goldsborough & Goldberg and W. M. Murphy, for appellant. Walter Guion, Atty. Gen., and R. G. Pleasant, Asst. Atty. Gen., for appellee.

LAND, J. This is a mandamus suit to compel the State Auditor to list and certify to the plaintiff board 20 low islands in the Mississippi river, situate within the limits of the Fifth Louisiana levee district.

Defendant answered that said islands do not belong to said levee district, but are held subject to entry and sale for account of the state and for the general school fund of the state, as provided by sections 1 and 7 of Act No. 124 of 1902.

There was judgment for the defendant, and the plaintiff has appealed.

[1] The solution of the question of title thus raised depends on the proper construction of the provisions of Act No. 44 of 1886, Act No. 124 of 1902, and Act No. 191 of 1908, the first and last being grants to the Fifth levee district.

By section 11 of Act No. 44 of 1886 the state granted unto the said levee district "all lands embraced in the original grants by Congress for levee and drainage purposes that are located in the parishes of the Fifth Louisiana levee district and are subject to overflows," and also all lands forfeited or sold to the state for taxes. Plaintiff admits that the islands in question are of recent formation, and never belonged to the United States, but accrued to the state by virtue of her ownership of the bed of the river.

Article 512 of the Civil Code reads:

"Islands and sand bars, which are formed in the beds of navigable rivers or streams, and which are not attached to the bank, belong to the state, if there be no adverse title or prescription."

Act No. 191 of 1908, amended the granting clause of Act No. 44 of 1886 by adding the following words:

"Also all other lands situated in said district belonging to the state of Louisiana be and the same are hereby granted to said board of commissioners, provided this act shall not apply to the internal improvement lands or any lands reserved to the state for school purposes."

As the records show that, in the year 1907, the said islands were surveyed by the state board of engineers at the expense of the levee district, it is probable that Act No. 191 of 1908 was passed for the purpose of vesting title to these lands in the plaintiff board. The grant in said act is broad enough to cover said islands, unless they fall within the exception of "lands reserved to the state for school purposes."

Defendant contends that said islands were so reserved by Act No. 124 of 1902:

"To provide for the classification, survey, entry and sale of islands other than sea marsh lands and certain other public lands of the state which were formerly the beds of lakes and of the bodies of water; to fix the price of the same, and to repeal all conflicting laws."

Section 1 reads as follows:

"Be it enacted, etc., that all islands, other than sea marsh islands, belonging to the state, as well as all other lands of the state, not the property of any levee district nor within the limits of any levee district, which were formerly the beds of lakes, or other bodies of water, whether navigable or unnavigable which are now, or may hereafter become dry, in whole or in part by reason of the recession therefrom of the water which formerly covered the same, be and the same are hereby declared to be open to entry and sale for account of the state for school purposes as hereinafter provided."

This section deals with "islands" and "other lands" which were formerly the beds of lakes or other bodies of water.

The qualifying phrase "not the property of any levee district, nor within the limits of any levee district," is a negative description applicable to both classes of lands. It is not reasonable to suppose that the lawmaker intended to take the lands of levee boards, and sell the same for public school purposes.

That would be the result if we should construe the section in question as dedicating all islands, except sea marsh islands, to public school purposes. Islands in levee districts stand on the same footing as other overflowed lands. There is no better reason for supposing that the lawmaker intended to revoke the grant of islands than of other lands to levee boards. The legislative intent not to interfere with any lands within levee districts is shown by the provisions of Act No. 123 of 1902, making it the duty of the Governor to direct the state board of engineers to make surveys of all unsurveyed lands belonging to the state, "not embraced within any of the levee districts of the state."

The purpose of Act 124 of 1902 was to provide for the survey, entry, and sale of islands and shallow lake lands not within any levee district. The reason and spirit of the law forbid any merely grammatical construction of its terms that would affect prior grants to the levee boards of the state, and the act excepts both lands granted, and lands not granted but within the limits of levee districts.

Defendant's case is based entirely on the contention that the words "not the property of any levee district, nor within the limits of any levee district," do not apply to the word "islands." These words immediately follow the two subjects of the sentence, and are separated from the second subject by a comma, and might well have been included in a parenthesis. The words in themselves are as applicable to "islands" as to "other lands."

[2] In 1908 the Legislature by Act 191 amended the granting clause of Act No. 44 of 1886 by adding the following words, to wit:

"Also all other lands situated in said district belonging to the state of Louisiana be and the same are hereby granted to said board of commissioners, provided this act shall not apply to internal improvement lands or any lands reserved to the state for school purposes."

No reference is made in the provisions of this statute to Act No. 124 of 1902.

The internal improvement lands referred to are those granted by Congress in 1841 for public works, such as the improvement of navigation. See Revised Statutes 1870, §§ 3021, 3022. The school lands referred to consist of seminary lands, and the sixteenth section in every township reserved and appropriated by Congress for public schools and of which the state was made a trustee for the benefit of the public.

See Constitution of 1898, arts. 254, 255, and Rev. St. 1870, §§ 2954, 2957, 2958.

The contention that the proviso refers to the school lands mentioned in act 124 of 1902 (that is, the islands) is not borne out by the language or the context. The words used refer to school lands reserved to the state. The islands referred to were not reserved, but ordered to be surveyed and sold.

If reserved, the islands were not reserved to, but by, the state.

However, we are of the opinion that Act No. 124 of 1902 has no application to islands and lands within the limits of any levee district, and therefore that the islands in question are not within the proviso of act 191 of 1908.

It is therefore ordered that the judgment below be reversed, and it is now ordered that peremptory writs of mandamus issue as prayed for by the relators in their petition.